and call the first case. I wonder if the attorneys, the state's attorney and the state appellate defender would step up and identify yourselves for the record so we know who you are. Both please step up. Good morning your honors, I'm assistant state's attorney Lisa Shalounis on behalf of the people of the state of Illinois. Counsel. My name is Deepa Punjabi from the office of the state appellate defender representing Alfredo Hernandez. Good morning to you both. You'll both be allowed 15 minutes to address the court in an oral argument and you may save up from your time any portion you wish for in response to the state's argument. Thank you. My intention this morning was to focus on issue number one, the issue dealing with the jury instruction. Okay. The case law in Illinois holds that it's an abuse of discretion for the trial court to deny an involuntary manslaughter instruction where there's sufficient evidence to support a verdict on the part of the jury. Is that right? So it's not simply a scintilla of evidence, but enough evidence to support a verdict by the jury. Do you agree with that? I don't agree with that, your honor. The standard as I understand it is that it's been described in various ways as some evidence, any evidence, just slight evidence. But that some evidence, if it were de minimis and could not by itself sustain a verdict pursuant to that instruction, would it still be enough to require that instruction? First of all, just in terms of logic, I suppose, what's the point of giving an instruction when that instruction will, if granted, have been insufficient for that particular result? Sure. There has to be some credible evidence, but the case law is clear that it's just some evidence. But it would be probably commensurate with the amount of evidence that would be required in a manifest way to the evidence test to support the verdict. There has to be enough there to create a question of fact, create a question for the jury. Well, then we're aligned. Okay. All right. Mr. Hernandez argues that in this case there was some credible evidence that his conduct constituted recklessness rather than murder. And the trial court made several errors in the standard that it applied when it declined to instruct the jury on involuntary manslaughter. First, the trial court mistakenly equated accident with recklessness. The trial court and the state in its brief both focused on the fact that the defendant took the knife downstairs with him intentionally and that he swung it in front of him intentionally, so his conduct somehow cannot be considered reckless. And I think this shows a confused understanding of the definition of recklessness. Your understanding would be that it looks to intent. Well, the case law holds that a defendant can act recklessly where he commits a deliberate act, but disregards the risk. But it's not intended to kill. It's not intended to kill or create great bodily harm. He consciously disregards the risk that that results in. Now, supposing the circumstantial inference precludes the likelihood of an intent not designed to kill, so that, for example, if the knife stabs the heart, would the disclaimer of the defendant of any intent to kill hold water under those circumstances where you would have to be, I suppose, schizophrenic to think you could stab someone in the heart and not kill them? Well, the case law has held that that's one factor to look at, the severity of the wound. But I mean, let's look at it in isolation. I know that those are factors, but in isolation one could, under certain circumstances, be satisfied only by looking at the wound, without looking at more. If the wound is pinpointed in a lethal, in an obvious, known lethal part of the body. Under certain circumstances. Unless there's an accident. But we're not dealing with accidents here. We're dealing with recklessness, as you state. Correct. I think under certain circumstances, certainly that would be enough, but not under these circumstances. Here, you have a case of a knife stabbing the liver and the heart. That's correct. So the points of contact between the knife and the defendant's body were in lethal spots. That's correct. So that weighs, at least even according to your correctly stated test, it certainly is a factor to be looked at. It's a factor, but I believe there's evidence here that Mr. Hernandez did not intend to stab Mr. Cardozo in the abdomen. Mr. Hernandez... See, that's where accident comes in. So you can't totally wave away accident. Correct. It may be a consideration in determining whether it's reckless. Then maybe his handling of the knife was reckless because by accident it penetrated a lethal spot. Correct. So I don't think you necessarily want to linearly separate the two. Sure. Accident comes in because you don't intend death or great bodily harm. But the fact that Mr. Hernandez did not intend to stab Mr. Cardozo in the abdomen and that he swung the knife down intentionally and that he swung it in front of him intentionally, that that precluded a finding of recklessness. Plus the statement of Flores, later perhaps retented, that he heard from the defendant a statement that he killed the victim because he was tired of him and wanted to get rid of him. That's correct. Mr. Hernandez's brother... He didn't say he killed him but that he was tired of him. That he stabbed him because he was tired of fighting with him. He did later recant that and I think that that would have been for the jury to weigh the credibility of that statement because it was conflicting. It was back and forth. There is evidence here that Mr. Hernandez didn't intend to stab Mr. Cardozo in the abdomen He testified at his trial that in fact Mr. Cardozo, he used sort of an odd phrase, he said Mr. Cardozo stuck the knife into his own stomach and this would tend to indicate that as Mr. Cardozo threw the first punch, he leaned forward into Mr. Hernandez, perhaps inadvertently causing the knife to penetrate his abdomen and that would be corroborated by the eyewitness accounts. You'd have a better case if Cardozo had his own knife, wouldn't you? Well, but then if we listen to that, why are we negotiating for involuntary manslaughter? Isn't that innocence of any wrongdoing except perhaps whatever minor felonies would be involved in holding a knife? Well, I think it created a question for the jury that he consciously But is the resolution involuntary manslaughter or is it a toss-up between innocence versus whatever other category must be assigned to that event, but not involuntary manslaughter if Mr. Cardozo leaned over into it and accidentally killed himself? Well, I think it creates a question for the jury that did Mr. Hernandez consciously disregard the risk of great bodily harm or death that handling the knife in that way, bringing it into the fight in this way, did that constitute You've got to admit that's a pretty tortured hypothesis, isn't it? I mean, that he brought down the knife, he was reckless in bringing down the knife because he discounted recklessly the possibility that in his contact with Mr. Cardozo, Mr. Cardozo would lean into the knife and kill himself. Well, I think it's plausible when you think about the role that alcohol played in this incident. You know, it's quite possible, neither of these parties were thinking clearly and it's quite possible Mr. Cardozo may not have seen that knife as he, that Mr. Hernandez had swung a knife in front of him as he started to throw a punch and Well, clearly the jury took that into consideration. He was convicted of second degree murder. He was convicted of second degree murder. It's quite possible that the only reason they found second degree murder was because they didn't have the involuntary manslaughter option before them. We don't know what the jury would have done had they had the opportunity to be instructed on the lesser offense. That's true. We don't. A rational jury, I think, under these facts could very well have found that Mr. Hernandez was acting with a conscious disregard rather than knowingly or intentionally. And he did have a weapon and the victim did not have a weapon. I'm trying to think of a circumstance where your analysis of when an involuntary manslaughter instruction is appropriate where it would never be appropriate to give it, given your analysis of the distinction between involuntary manslaughter and murder. Can you think of a single case where involuntary manslaughter might not be appropriate? I.e., if you look at the definition of murder in 5.9.A.1 and you look at the definition of involuntary manslaughter in 5.9.3, just the bald language of the statute that defines the two offenses. It seems to me that an artful attorney, and I include you in that, can always make an argument that every murder case requires an involuntary manslaughter instruction. Because the bare definition of the two crimes is so close, so similar. That it probably ought to be a jury question in every case. Now, is that the law in Illinois that it should be a jury question in every case? So maybe what we ought to do is just say, look, and instruct the trial judges. Always give the involuntary. That's the safe thing to do. The standards are close, you're right. But certainly there are cases in Illinois that have found there are circumstances where the involuntary manslaughter. But that can't possibly be the law, can it? That involuntary would be appropriate in every instance where murder is charged. That's not the law. But we have to write an opinion then that, at least in this particular case, supports your analysis. And I think you would probably fall back on the position that every case has to be decided on its own set of laws. You probably would want to include intoxication in determining that right line, wouldn't you? So that in every intoxication case, perhaps, the basis for the lesser included offense might be present. But that would be a generalization that you would pretty much have to live with, wouldn't you? I mean, of course, you're ready to live with it as long as you're working the defense. I'm not arguing for a standard where the involuntary manslaughter instruction should be given alongside the murder instruction all the time. But I think there are facts here. There were several facts in this record that would warrant an involuntary manslaughter instruction and showed evidence of recklessness. Would intoxication be one? The intoxication was certainly one of them. It lowered Mr. Hernandez's inhibitions, caused him to perhaps disregard... What about his remorse after the incident? Would that be included, too? That's something that the trial judge could take into consideration. I didn't mean to do it. I think it's certainly something... I only meant to hurt him. It's certainly something to consider. It's a fact-intensive standard. We also have to remember that Mr. Cardozo, in this case, was the initial aggressor, and Mr. Hernandez... Do we know that for sure? This started out as a barroom fight, didn't it? It started out... Well, they had been drinking all day, and they had been roughhousing sort of playfully. It escalated. They started fighting in the parking lot of a restaurant. Presumably there was a robbery involved, too, at least according to some of the victims' witnesses. Well, I believe the testimony on that was conflicting. So that's another question I think the jury would have to determine. But Mr. Hernandez tried to walk away from this fight several times. The fight started in the parking lot. He tried to walk away there. But Mr. Cardozo came after him shouting that he wanted to continue the fight. Cardozo was a real pain in the neck, wasn't he? Mr. Cardozo, when Mr. Hernandez tried to walk away, he came after him shouting he wanted to continue the fight, and he almost ran over him with his van and, you know, using his car as a weapon. And so it's not entirely accurate to say that he never used a weapon during this conflict. However, there was an attenuation, was there not? When Mr. Cardozo returned to his home and the defendant retired to his apartment and then there was a powwow between Mr. Cardozo and some of his friends who advised him, gather the troops and let's pay another visit back to the defendant. So at least in that segment, if you would consider that moment and that disruption that I just described to be an attenuation, then the aggressor in that latter phase of that evening was the victim. But Mr. Cardozo told Mr. Hernandez that he would be back. He was going to continue this fight. He was going to come back to his house. And he was going to come back with friends. He told him he was going to come back with some backup. And in fact, he made good on that threat. Mr. Cardozo was the one who was trying to round up his friends. And Mr. Flores was taking the credit for advising that he not go back himself, but that he go back with the pack. Correct. Mr. Flores advised him to round up some more people. But nevertheless, Mr. Cardozo came back. He was not ready to give up on this fight. Mr. Hernandez had seen Mr. Cardozo use a weapon and a knife, in fact, before in a previous fight. He testified that he was scared by Mr. Cardozo's tone. It sounded very aggressive. He didn't know what he was facing out there. He testified that he didn't know whether Mr. Cardozo had a weapon and he didn't know whether Mr. Flores had a weapon. We agree with you. We have to analogize this case to something that's already been reported and is out there. What's your best case as a set of analogous facts where an involuntary manslaughter instruction should have been given? Well, Your Honor, there is the case of the Illinois Supreme Court case of People v. Whiters. I knew you were going to say Whiters. Yeah, but that's why Justice Scalia laid the foundation for that when he asked whether the defendant in this case expressed remorse. Because that's what happened there. There was an expression of remorse and an immediate outcry by the defendant. What's happened here? I didn't expect this. Get medical help. I'm sorry for what I did. None of which was present here. Here, on the contrary, there was flight. Can we really compare Ms. Whiters to the defendant in this case given the circumstances and the context in which she found herself in the immediate run-up to her stabbing? What was his name? Barker. Can you really compare what Whiters was faced with in Barker as to what Hernandez was faced with? Hernandez could have just stayed upstairs and shouted back epithets, couldn't he? He didn't have to go downstairs with a knife and brandishing a knife. That's true. If he had remained in his own apartment, he'd still be in that apartment today, wouldn't he, rather than being in prison? Well, we don't know. I mean, it looked as though Mr. Cardozo was not going to relent on this fight. Did he get anything better than Whiters? I guess that's what I'm asking. In Whiters, of course, it was a slight female who allegedly had been just raped by the man she killed. Sure. And, of course, the Supreme Court, in reviewing the facts in Whiters, specifically mentioned the fact that there had been what she initially claimed to be was an involuntary sexual encounter. Later retracted, admittedly, when the Supreme Court points that out. But this guy was still drunk. He was still ripping telephones out of the wall. He was still strangling her and threatening to beat her up. None of that is present here. Well, in Mr. Hernandez's mind, he was under an immediate threat that was not going to go away. Mr. Cardozo had not shown any signs of relenting. And he testified the locks in his building did not work very well. He had elderly neighbors. He didn't want to create a disturbance in the building, so he came downstairs. And, again, with a knife in his hand. Because it would have been perfectly reasonable for him to believe that Mr. Cardozo or his friend outside was armed. Okay. I think I understand your position. I would hope that you would come up with something better than Whiters, but that's okay. Well, there's the case of People v. DiVincenzo. In that case, the involuntary manslaughter instruction was warranted where the defendant and the victim got in a fight. And the defendant was the initial aggressor. Was there a weapon involved? There was no weapon involved in that case. The defendant slapped and punched the victim, resulting in the victim's death. And there the court found that involuntary manslaughter instruction was warranted. And it was similar to this case in that you had two people of equal size and strength. Yeah, but one of them had a 10-inch butcher knife. But Mr. Hernandez had no way of knowing... That's a great equalizer, isn't it, even if you were smaller? Mr. Hernandez had no way of knowing whether or not Mr. Cardozo was armed or whether Mr. Flores... Mr. Flores testified that when Mr. Cardozo was getting ready to throw a punch, he was right behind him ready to do the same. So it was two-on-one. Okay. Anything else you'd like to stress? Well... The jury, as you pointed out, found that this was second-degree murder. What we used to call voluntary manslaughter. Correct. That's an inside joke. You're too young to remember the debate over it. Well, they were obviously thinking about what mental state accompanied the acts causing death. Because they submitted a question during deliberation about whether the acts referred to bringing the knife or the actual stabbing. So they were thinking about what mental state Mr. Hernandez would have had at the various stages leading to Mr. Cardozo's death. And we don't know what the jury would have done if they had had the opportunity to be instructed on involuntary manslaughter. Okay. Are there any more questions from the Court? You'll be given an opportunity to respond to the State's argument. Okay. Thank you, Your Honor. You're welcome. Good morning, Your Honors. May it please the Court. This was a case where the trial court properly exercised its discretion in refusing an instruction for involuntary manslaughter, which was not supported by the evidence that was presented in this case. The evidence in this case is How much evidence has to be presented? There has to be some credible evidence which, if believed, would have supported the verdict. Well, wait a minute. Your statement is a bit redundant. You said some credible evidence which, if believed. Now, which is it now? Does the evidence have to be credible and believed or just credible? And what determines whether it's credible? That's a question of fact. Your Honor, I'm going to ask you a question. Can a reasonable jury have concluded here that the defendant acted reckless? A reasonable? No. Why is that? Because there was evidence sufficient to sustain that the defendant's behavior was not reckless in any way, shape, or form. Now, is that enough? If the evidence is sufficient to go the other way? Or is the defendant entitled to an instruction as long as he has some evidence? It's not a question of having sufficient evidence, but I suppose at best he has to be able to make, and none of the cases that I've read capture it in this language, but at the very best he would simply have to make a prime official case. But that doesn't mean that he would win. As long as there is enough evidence in the record, or if the jury did decide to go his way, their verdict would be sustainable. That's true, but in this case there was no evidence. Why not? He had his own disclaimer. You have the testimony of Flores. You have the fact that he did not bring a weapon necessarily lethally. He didn't bring a gun. He didn't bring even a dagger. He brought a kitchen tool with him, which had the potential of killing somebody, but it was still not something necessarily that people ordinarily plot a killing with. They may use it on the spur of the moment, but if somebody plans to kill, I suppose common experience would tell you that they probably bring a more specialized weapon for it. Let's talk threshold legal issue here first. What is our standard of review when the trial judge either grants or denies an instruction in a criminal case? Okay. As a threshold, we have that standard of review. Did the trial judge abuse his or her discretion? How do we paraphrase that duty that we have? In cases where involuntary manslaughter is the question, no reasonable person could have come to the same conclusion, right? No reasonable person could have reached the decision that the trial judge reached in this case to deny an involuntary manslaughter instruction. That's our standard of review. Now we're allowed to take a look at the facts, aren't we? But only within the context of could any reasonable person have reached the conclusion that an involuntary manslaughter instruction should have not been given. So we're really not de novoing the facts in this case, are we? We're reviewing the facts in the light of a prior trial judge who has already made a determination on the fact. Okay. That's a softball for you. But it's sometimes forgotten because when you read some of these involuntary manslaughter cases, you come to the conclusion that what's really going on at the appellate level is a de novo review of the facts. I've made my speech. An argument could be made for a de novo review if there's no conflict, if the evidence is not a matter of demeanor. And generally the cases now follow that line. So, for example, if it's a documents appeal, there may be de novo standards rather than manifest way to the evidence standards. And arguably this may not be a demeanor situation. For the judge to say I believe him but don't believe them, it's a question of who the jury would believe. And we may be in as good a position of determining that as the trial judge. It seems to me, though, Justice, you've just tampered with our standard of review. So what's new about that? Go ahead. In this case, arguably, I cannot contemplate a situation in which the judge would bring a 10-inch long butcher knife which would not be thought of as... Look at the context here. We have an altercation that derives from the playful antics of two intoxicated adults. And it suddenly evolves into something more serious and grudge-bearing, but not of long-standing. And the whole context is here basically premised on saving face, who emerges as one who basically vindicates their honor. And it's not a context that ordinarily calls for a killing. Although killings do emanate from such contexts. But in looking at the circumstances of it, this was a call-out by a person weaponless, you know, with another person taking a knife which is a... No pun intended, that knife is a double-edged sword, because on the one hand it can possibly prove an attempt to kill. On the other hand, when he's taking out that weapon, he doesn't come out with the notion there's no reason for him to think he's going to have to kill. And it's simply conduct provoked by the nature of a physical dispute. And he denies having had any such intent. The knife, although it penetrates serious organs, is not deliberately aimed at a place. It's at a point where contact by simply holding the knife would result in penetration of that particular spot. It doesn't show that he necessarily aimed it and deliberately threw it. Because it also lent itself, at least in point of contention, to a point where he could have aimed it. But it doesn't go beyond his argument to the notion that the defendant fell into the knife. So it doesn't mean, at the very least, it shows it wasn't particularly aimed. Not necessarily. The medical evidence in this case established that the lung, liver, and heart were penetrated by the knife. Even an accident where, in this case, as the defendant contended, the victim fell upon the knife, wouldn't have penetrated up to the hilt, which would have created a stab wound. I don't necessarily want to argue anatomy with anyone, nor am I, in that sense, in any way expert enough to do it. But one would think that when you get both the liver and the heart, it's at the lower portion of that upper quadrant rather than aimed at the heart. And so that it would be within the ordinary reach or extension of the weapon. It also penetrated his lung, Your Honor, which would imply that it was actually high. Because there was damage to the lung. And in fact, the defendant, in his confession, the videotaped confession to the police after he was extradited, after five years, the defendant did tell the police that he intended to cut the victim. He stated that he did not intend to kill him, but he did intend to cut him. Yeah, but cutting means that you're not necessarily looking for any fatal spots. The Supreme Court of Illinois held in canon that a defendant's testimony that he did not intend to kill does not necessitate... Of course, that's not going to be enough, because every defendant is going to claim that. But it has to be... But on the other hand, it's not totally discountable if there is a sufficient surrounding context that would build to some sustainability of a verdict which would go in that direction. Indeed, Your Honor, but the defendant also testified that he did not know that the victim was outside with another individual. And that when he did descend the stairs, he came with two other people. So it was not, in fact, a two-on-one. It was a three-on-two, where the defendant and his brother and his friend, Dagoberto Abarca, outnumbered the victim and Mr. Flores-Bahena. And the testimony was that when they came down the stairs, there was no conversation. There was no altercation. The defendant walked up to the victim and stabbed him with a 10-inch butcher knife, which does not insinuate or imply recklessness, as seen in Whiter's or the other case relied on by the defendant, which was Gibson, in which there was a struggle and a stabbing occurred. There was no testimony that there was a struggle or that any words were exchanged at the point which the defendant descended the stairs and missed. There was a physical assertion of force which could lead to that kind of recklessness. Obviously, I'm being devil's advocate. Indeed, Your Honor. There was also testimony by the defendant that he was not truly frightened of the victim and that if he had chosen to remain in his apartment, nothing would have occurred. He did testify that he was frightened for the safety of his younger brother, but his younger brother came out of the apartment with him to confront the victim. So defendant's own theory falls apart based on his testimony and the testimony of the other people who witnessed the offense. Additionally, although both the defendant and the victim were intoxicated, intoxication is statutorily not mitigating to mental state in Illinois. Additionally, following the offense, defendant had the presence of mind to switch clothes with his friend, flee the premises, return to his own clothing before laying hiding in his brother's apartment for three days before he fled to Mexico, where he remained for five years. Of course, that flight, aside from the fact that flight is never sufficient evidence to convict, but even in establishing circumstances, he might just as easily decided to flee if the charge would have been involuntary manslaughter. I don't even know what his, is there any evidence of his immigration status, for example? Your Honor, although that was asked of many of the witnesses, I do not actually believe that it was in part of defendant particularly, whether or not he was. But I don't think much can be gleaned from the flight itself, because even the lower end of the lesser included offense could very well have triggered or motivated flight. That's true, Your Honor. However, in this case, the defendant did have the presence of mind to attempt to conceal his identity while he was leaving the scene of the crime. He did not, he was friends with the victim. He stated that they had been friends the entire time that he had been in the United States. And so, defendant, the evidence presented was the defendant had enough presence to attempt to conceal his own identity and then return to his own clothes that scene only hours after the incident occurred. Upon our case of Embroy, how do you distinguish that? I'm sorry, Your Honor, I'm not familiar with that case. Are you familiar with the facts of that case? It's a father who shot his daughter. He was playing Russian Roulette with a bunch of girls. No. Okay. If there are no further questions from the Court. Thank you, Counsel. And for these reasons and those contained in the People's Brief, we ask that you affirm defendant's conviction for second degree murder. A final word, Counsel. I'll be brief, Your Honors. The State argues that because the lung, liver, and heart were penetrated, this must have meant that Mr. Hernandez intentionally stabbed Mr. Cardozo. But I just want to point out that we have to remember Mr. Cardozo was in the middle of throwing a punch. So he would have been coming at Mr. Hernandez quite forcefully, perhaps forcefully enough to cause the knife to penetrate quite deeply. So there were several facts in this record to support the instruction. I won't go through them all again. The jury should have had the opportunity to decide whether Mr. Hernandez behaved recklessly rather than knowingly or intentionally. Do you have anything to say about my sermon on the mount with respect to the standard of review? I didn't give you a chance to talk about that when you were here the first time. Well, the case law is pretty consistent that where there is some evidence in the record to support an involuntary manslaughter instruction, the trial court does abuse its discretion in not giving that instruction. And so similarly in this case, we submit that there were sufficient facts here that it was an abuse of discretion not to issue that instruction to the jury. So therefore, Mr. Hernandez, if there are no more questions from the court, Mr. Hernandez respectfully asks that this court reverse his conviction and remand the matter for a new trial before a properly instructed jury. Thank you both. The case will be taken under advisory.